UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ARTHUR L. BRADDY,

                    Petitioner,

v.                                    Case No. 3:15-cv-152-J-39JRK

SECRETARY, DOC, et al.,

                    Respondents.
_____


**ORDER**

**I.  STATUS**

Petitioner Arthur L. Braddy challenges a 2007 (Duval County) conviction for possession of a firearm by a convicted felon. Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1) at 1. He filed the Petition on February 3, 2015, pursuant to the mailbox rule.[1]  In the Petition, he raises six grounds for habeas relief.  Respondents filed an Answer in Response to Order to Show Cause and Petition for Writ of Habeas Corpus (Response) (Doc. 14).  Exhibits are appended

_____

[1] The Court gives pro se inmate petitioners the benefit of the mailbox rule.  Houston v. Lack, 487 U.S. 266, 276 (1988).  See 28 U.S.C. § 2244(d).  In this instance, the Petition was provided to the prison authorities for mailing and stamped on February 3, 2015. Petition at 1.  See Rule 3(d), Rules Governing Section 2254 Cases in the United States District Courts.  The Court will also give Petitioner the benefit of the mailbox rule with respect to his inmate state court filings when calculating the one-year limitation period under 28 U.S.C. § 2244(d).

to the Response (Doc. 14).[2]  Petitioner submitted a Reply Brief (Doc. 15).  See Order (Doc. 5).

The Court provides a brief procedural history for historical context.  Petitioner was charged by information with multiple offenses, including possession of a firearm by a convicted felon. Ex. A at 11-12.  After a jury trial on the possession of a firearm charge, the jury returned a verdict of guilty as charged.  Id. at 57.  On December 10, 2007, the trial court sentenced Petitioner to twenty-five years in prison as an habitual violent felony offender. Id. at 65-67.

Petitioner appealed.  Id. at 72; Ex. B; Ex. C; Ex. D.  On April 8, 2009, the First District Court of Appeal (1st DCA) affirmed per curiam.  Ex. E.  The mandate issued on April 24, 2009. Ex. F.

On December 4, 2009, pursuant to the mailbox rule, Petitioner filed a Motion for Post Conviction Relief 3.850.  Ex. G.  He amended his motion (Rule 3.850 Motion).  Id.  The state responded. Id.  The trial court conducted an evidentiary hearing on three of the grounds.  Ex. H at 325-77.  On January 6, 2014, the circuit court entered an Order Denying Defendant's Motion for Post

---

[2] The Court hereinafter refers to the exhibits as "Ex."  Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the particular exhibit. Otherwise, the page number on the particular document will be referenced.  The Court will reference the page numbers assigned by the electronic docketing system where applicable.

Conviction Relief. Id. at 157-319. Petitioner appealed. Id. at 320; Ex. I; Ex. J;; Ex. K. On November 17, 2014, the 1st DCA affirmed per curiam. Ex. L. The mandate issued on December 15, 2014. Ex. M.

On March 21, 2011, Petitioner filed a Petition for Writ of Habeas Corpus in the 1st DCA. Ex. N. The 1st DCA denied the petition alleging ineffective assistance of appellate counsel. Ex. O.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (U.S. Apr. 3, 2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). A state court's factual findings

are presumed correct unless rebutted by clear and convincing evidence.[3] Id. § 2254(e)(1); Ferrell v. Hall, 640 F.3d 1199, 1223 (11th Cir. 2011).

..."It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [Harrington v. Richter, 562 U.S. 86, 101 (2011)] (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016).[4] Regardless of whether the last state court provided

---

[3] "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003)), cert. denied, 133 S.Ct. 1625 (2013).

[4] As suggested by the Eleventh Circuit in Butts v. GDCP Warden, 850 F.3d 1201, 1204 (11th Cir. 2017), in order to avoid any complications if the United States Supreme Court decides to

a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Richter, 562 U.S. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

Where the last adjudication on the merits is unaccompanied by an explanation, the petitioner must demonstrate there was no reasonable basis for the state court to deny relief. Id. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; Marshall, 828 F.3d at 1285.

Although the § 2254(d) standard is difficult to meet, it was meant to be difficult. Indeed, in order to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented . . . was so lacking in justification that

overturn Eleventh Circuit precedent as pronounced in Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227 (11th Cir. 2016) (en banc), cert. granted, 137 S.Ct. 1203 (2017), this Court, will employ "the more state-trial-court focused approach in applying § 2254(d)[,]" where applicable.

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Richter</u>, 562 U.S. at 103.

### III.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A.  Ground One

In his first ground, Petitioner raises a claim of ineffective assistance of trial counsel for failure to raise an objection to "three false statements" made by Officer Richard C. Santoro, Jr., or for failure to make some attempt to impeach Officer Santoro with his deposition testimony.  Petition at 6.  The first statement at issue is:

> A      Ah, as I got him in a headlock, my door -- my patrol car was actually open, the doors.  As I got him in the headlock, I could just like see his arm go back behind his back area and he brings out a weapon, a pistol, and then brings it up.
>
> Q      At the point where you see a pistol in the defendant's hand from reaching from his back area, what do you do in response at that point?
>
> A      I immediately like -- basically, like I said, my door was open, and I then throw him into my car, and myself and the defendant actually go into the car, and the guy ended up -- just took the gun out of his hand.

Ex. H at 199.

The second statement at issue is:

> Q      Okay.  And so the gun that was on the ground, did you -- you said that he was in custody, so those people there were still

there on the ground, they were still sitting there; correct?

     A    I told them to move away from the gun as I saw the gun fall to the ground.

     . . . .

     Q    So you are telling us that this gun that you found on the street -- but you're not sure if it's the same gun that fell from his hands; are you? Because you don't know if the people that were sitting there switched it out, or you don't know if Mr. Lugo switched it out? Because you didn't know Mr. Lugo; did you?

     A    When the gun fell from his hand, I told Deas and Henderson to move away from the gun. They moved clear away from the gun, more towards the corner of the place. They never went back towards that area.

Id. at 210, 213.

The third statement at issue is:

     Q    When -- did that gun, from the point where it left Mr. Braddy's hand onto the ground, did it ever leave your control or out of your vision before it was stored in the Jacksonville Sheriff's property room?

     A    No.

Id. at 201.

In order to prevail on this Sixth Amendment claim, Petitioner must satisfy the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different).

Petitioner exhausted this ground by raising it in his Rule 3.850 motion. Ex. G. The trial court denied relief, Ex. H, and the 1st DCA per curiam affirmed. Ex. L.

Upon review of the circuit court's order, it set forth the applicable two-pronged <u>Strickland</u> standard as a preface to addressing the claims of ineffective assistance of counsel. Ex. H at 158-59. The court provided this explanation for denying the claim of ineffective assistance of counsel with respect to the first statement:

> As to the first set of statements, Defendant contends Officer Santoro's response implies that the officer took the gun out of Defendant's hand and, therefore, contradicts both the officer's deposition testimony, wherein he stated he "threw the Defendant into the side of his car door and the slam of hitting the car door dislodged the gun from his hand," (Def.'s Am. Mot. 7), and the officer's later trial testimony that he did not actually take the gun out of Mr. Braddy's hand but that it fell to the ground while he was physically struggling with Defendant. (Def.'s Am. Mot. 7.) A careful review of the record, however, reveals that Officer Santoro's deposition and trial testimonies were not inconsistent. During his deposition, Officer Santoro actually stated, "So I guess by the time I slammed him into the car door . . . basically, I dislodged the gun from his hands." (Ex. E at 16.) Later in the deposition, Officer Santoro indicated that the gun fell to the floor as a result of Defendant slamming into the car door. (Ex. E at 17.) Both statements were consistent with Officer Santoro's trial testimony; indeed, Officer Santoro never testified that he physically

took the gun out of Defendant's hand, instead he testified that during a physical struggle, he threw Defendant against the open door of his patrol car, thereby dislodging the gun from Defendant's hand. (Exs. D at 27, 48; E at 16-17.) Because Officer Santoro's statements were not inconsistent and did not amount to perjury, counsel was not deficient for failing to object to them or to impeach the officer based on his responses.

Ex. H at 162 (citations omitted).

Although Santoro's response that the struggle just took the gun out of Petitioner's hand was not a model of clarity, on cross examination Santoro stated that he saw the gun fall out of Petitioner's hands. <u>Id</u>. at 209. Through his questioning, defense counsel brought forth a more precise response:

> Q    Okay. And so at some point did he - and that's when you took the gun out of his hand?
>
> A    That's when I threw him against my patrol car, and that's when the gun actually fell out.
>
> Q    So you never took the gun out of his hands; did you?
>
> A    I guess you can say my patrol car did.

<u>Id</u>. at 212.

As noted by the circuit court, Officer Santoro's statement did not constitute perjury. At most, it was a poorly-worded response. To remedy any confusion caused by his initial response, defense counsel effectively cross examined Santoro, with Officer Santoro's response dispelling any mis-impression that he actually took the

gun out of Petitioner's hand rather than dislodging it from his hand. Since Officer Santoro clarified his response by stating that the gun "fell out" when he threw Petitioner against the patrol car, there was no real need for defense counsel to impeach Officer Santoro with deposition testimony. As such, defense counsel's performance was not deficient.

In denying the claim of ineffective assistance of counsel with respect to the second statement, the circuit court said:

> As to the second set of statements, Defendant argues they constitute perjury because they contradict Officer Santoro's deposition testimony, wherein he stated that Deas and Henderson actually stayed at the scene the entire time. (Def.'s Am. Mot. 9.) However, a careful review of Officer Santoro's trial statements reveal that he never stated Deas and Henderson left the crime scene; rather, he merely stated he told them to move away from the gun and they did so. (Ex. D at 46, 49.) This is consistent with Officer Santoro's deposition testimony. (Ex. E at 29–30.) Accordingly, counsel was not ineffective for failing to object to Officer Santoro's statements or to impeach the officer on the basis of prior inconsistent statements.

Ex. H at 163 (citations omitted).

Upon review of the second statement at issue, it did not so differ from deposition testimony to require effective defense counsel to either object or seek to impeach the testimony. During the deposition, Officer Santoro said that Deas and Henderson were still sitting down behind him as the fight ensued between him and Petitioner, and they stayed there the whole time. Id. at 289. As noted by the circuit court, Officer Santoro's testimony that he

asked Deas and Henderson to move away from the gun after Petitioner was on the ground was not inconsistent with Officer Santoro's deposition testimony. The struggle was over, the gun was on the ground, and at that point, Officer Santoro asked the two individuals to move away from the gun and requested that Mr. Lugo pick up the gun and place it in the patrol car. Id. at 213.

With regard to the third statement, the circuit court succinctly described Petitioner's claim:

> As to the third set of statements, Defendant argues Officer Santoro's response amounted to perjury because it contradicts his earlier trial and deposition testimonies that he had asked Mr. Lugo, a nearby citizen, to collect the firearm off the ground for him and put it in his patrol car. Therefore, Defendant contends the officer did not actually have control over the firearm as his trial statement appears to indicate. Defendant also contends Officer Santoro's deposition testimony that Mr. Lugo picked up the firearm from the ground in front of Deas was patently false in that Officer Santoro clearly stated at trial, and in his deposition, that Deas and Henderson moved away from the gun to the corner area, "mean[ing] that this alleged firearm had to be at the corner of the place where Deas and Henderson went and not where Officer Santoro said he dislodged it from the Defendant's hand." (Def's Am. Mot. 12.)

Ex. H at 163.

The court again found that Officer Santoro's trial response was not false or constituted perjury. Indeed, the court found that the statements made during deposition were not inconsistent with the trial testimony. Id. at 164. Also of significance, the court

noted that defense counsel objected to the introduction of the firearm, challenging the basis for chain of custody. Ex. H at 203-205. However, the trial court overruled the objection. Id. at 205. In this regard, defense counsel's performance was not outside the wide range of professionally competent assistance demanded of attorneys in a criminal case.

The circuit court rejected this claim of ineffective assistance of trial counsel. The First District Court of Appeal (the 1st DCA) affirmed. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has not accomplished that task.

Indeed, if there is any reasonable basis for the court to deny relief, the denial must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Ground one is due to be denied.

## B.  Ground Two

In his second ground Petitioner raises a claim of prosecutorial misconduct for eliciting false statements from Officer Santoro. Petitioner references the question from the prosecutor, "[a]t the point where you see a pistol in the defendant's hand from reaching from his back area, what do you do in response at that point?" Ex. H at 199. Officer Santoro responded: "I immediately like –- basically, like I said, my door was open, and I then throw him into my car, and myself and the defendant actually go into the car, and the guy ended up –- just took the gun out of his hand." Id. Petitioner also references to the prosecutor's question: "What do you recognize it to be?" Id. at 201. Officer's Santoro responded: "[t]o be the weapon that was taken off of the defendant." Id.

In his Petition, Petitioner asserts that by suggesting through the questions and responses that the gun was taken from him, "[t]his deliberate deception" deprived him of due process of law because the gun was actually collected from the ground by Mr. Lugo. Petition at 14. The circuit court succinctly describes Petitioner's claim: "Defendant contends the officer committed perjury and the prosecutor knowingly failed to correct the inconsistencies resulting in Defendant's unlawful conviction." Ex. H at 164-65.

In addressing this claim, the court found that the statements were not false, misleading or inflammatory, and certainly did not prejudice the jury. Id. at 165-66. The court analyzed the

deposition testimony compared to the trial testimony, and concluded that they were not inconsistent because Officer Santoro testified there was a physical struggle in which he threw Petitioner against his patrol car, thereby dislodging the gun. Id. at 166. Rather than denying that the gun fell from Petitioner's hand after he was thrown against the vehicle, Officer Santoro clarified his response on cross examination, explaining "[t]hat's when I threw him against my patrol car, and that's when the gun actually fell out." Id. at 212. When asked again if he took the gun out of Petitioner's hands, he said, "I guess you can say my patrol car did." Id.

The circuit court further found that the response that it was the weapon taken off of the defendant was also not false or misleading. Id. at 166. The court said:

> Again, the Court finds that Officer Santoro's response, which was made as part of the State's foundation for introducing the firearm into evidence, (Ex. D at 28-31), was neither false nor misleading. Officer Santoro testified at trial that he saw Defendant holding a gun and that when it fell from Defendant's hand during the struggle, he asked Mr. Lugo, a nearby citizen, to collect it off the ground for him. (Exs. D at 27, 29, 32-33, 44-46, 48-49, 55; F at 3, 4.) Such statements were consistent with Officer Santoro's deposition testimony. (Ex. E at 14-18, 30-32.) Moreover, defense counsel actually objected to the introduction of the firearm on the basis of chain of custody, specifically arguing that Mr. Lugo collected the gun instead of Officer Santoro. (Ex. D at 31-33.) Consequently, the prosecutor did not err in allowing Officer Santoro to testify as he did. Nor has Defendant established that the officer's statements were false, misleading,

> or inflammatory to the jury. Therefore,
> Ground Three is denied.

Ex. H at 166-67.

In this instance, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. AEDPA deference will be given to the last adjudication on the merits provided by the 1st DCA in affirming the decision of the circuit court. Its decision is not inconsistent with Supreme Court precedent. The Court finds that the state court's adjudication of this claim is not contrary to or an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground two.

The record itself refutes the claim that the prosecutor's questions deprived Petitioner of a fair and impartial trial. The jury was not improperly misled. Any misimpression left by the prosecutor's questions and Officer Santoro's responses was corrected through effective cross examination by defense counsel.

To the extent Petitioner is claiming jury confusion, his claim lacks factual support or substance. Officer Santoro testified that his struggle with Petitioner lasted approximately six to eight minutes. Ex. H at 217. When asked if "this is the same gun that you saw that you said fell out of Mr. Braddy's hands[,]" Officer Santoro responded affirmatively. Id. at 215. Officer Santoro provided a detailed description of his struggle with Petitioner and his decision to ask Mr. Lugo to pick up the gun. Id. at 216-20.

Petitioner's claim that the prosecutor knowingly used perjured testimony is without merit and is due to be denied.

To the extent Petitioner is attempting to raise a claim that there has been a <u>Giglio</u>[5] violation, he is not entitled to relief. There is a <u>Giglio</u> violation "when the prosecution solicits or fails to correct false or perjured testimony" and this testimony could "in any reasonable likelihood have affected the judgment of the jury." <u>Rodriguez v. Sec'y, Fla. Dep't of Corr.</u>, 756 F.3d 1277, 1302 (2014) (citing <u>Giglio</u>, 405 U.S. at 153-54 (quoting <u>Napue v. Illinois</u>, 360 U.S. 246, 271 (1959))), <u>cert</u>. <u>denied</u>, 135 S.Ct. 1707 (2015). The state commits a violation of <u>Giglio</u> if it uses perjured testimony and the prosecutor knew or should have known of the perjury. <u>Id</u>. (citation omitted).

Thus, "[i]t is by now almost axiomatic that, '[i]n order to prevail on a <u>Giglio</u> claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material.'" <u>Raleigh v. Sec'y, Fla. Dep't of Corr.</u>, 827 F.3d 938, 949 (11th Cir. 2016) (citations omitted). False testimony is material if there is any reasonable likelihood that the falsehood could have affected the result. <u>Id</u>. (citation omitted). But, there is an additional factor which this Court must take into consideration when reviewing a <u>Giglio</u> claim on habeas

_____

[5] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

review; Petitioner must satisfy the <u>Brecht</u> standard.[6] Therefore, if Petitioner fails to demonstrate the error had a substantial and injurious effect on the outcome of the trial, he would not be entitled to habeas relief. <u>Rodriquez</u>, 756 F.3d at 1302 (citing <u>Guzman v. Sec'y, Dep't of Corr.</u>, 663 F.3d 1336, 1355-56 (11th Cir. 2011)).

Respondents argue that the testimony at issue "was hardly material," and there was no <u>Giglio</u> violation, since as a factual matter, the testimony did not constitute perjury. Response at 18. In essence, Respondents contend that Petitioner has failed to establish that the prosecutor knowingly used perjured testimony and the testimony was material and could have affected the judgment. <u>Id</u>. at 16.

It follows that pursuant to 28 U.S.C. § 2254(d), Petitioner is not entitled to habeas relief based on his <u>Giglio</u> claim unless he demonstrates that the state court's adjudication of the claim was contrary to, or an unreasonable application of <u>Giglio</u>, or was based on an unreasonable determination of the facts, and he demonstrates that the <u>Giglio</u> error was not harmless under <u>Brecht</u>.

Apparently, Petitioner is attempting to challenge the state court's conclusion that Officer Santoro did not provide false testimony. To the extent Petitioner is asserting that the state court made an unreasonable factual finding when it found Santoro's

---

[6] <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).

testimony was not false, Petitioner has not shown that no
reasonable jurist would agree with the state court's factual
determination. <u>See</u> 28 U.S.C. § 2254(d)(2). Indeed, this Court, in
considering this claim,

> may not characterize these state-court factual
> determinations as unreasonable "merely because
> [we] would have reached a different conclusion
> in the first instance." <u>Wood v. Allen</u>, 558
> U.S. 290, 301, 130 S.Ct. 841, 175 L.Ed.2d 738
> (2010). Instead, § 2254(d)(2) requires that we
> accord the state trial court substantial
> deference. If "'[r]easonable minds reviewing
> the record might disagree' about the finding
> in question, 'on habeas review that does not
> suffice to supersede the trial court's ...
> determination.'" <u>Ibid</u>. (quoting <u>Rice v.
> Collins</u>, 546 U.S. 333, 341-342, 126 S.Ct. 969,
> 163 L.Ed.2d 824 (2006)).

<u>Brumfield v. Cain</u>, 135 S.Ct. 2269, 2277 (2015).

Here, the state court factual finding was not "unreasonable"
under 2254(d)(2). The circuit court did not apply an incorrect
legal standard, as the court concluded that although Petitioner
claimed Santoro perjured himself at trial, the record showed that
his testimony was not directly inconsistent with previous
testimony. By its ruling, in line with Supreme Court precedent,
the circuit court determined there was no "deliberate deception of
a court and jurors by the presentation of known false evidence[.]"
<u>Giglio</u>, 405 U.S. at 153. The First District Court of Appeal
affirmed this decision.

Deference under AEDPA should be given to the state court's
decision. Petitioner raised the issue in his Rule 3.850 motion and

on appeal of the denial of the Rule 3.850 motion, and the appellate court affirmed.  The state court's adjudication of this claim is not contrary to or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Petitioner is not entitled to habeas relief on ground two.

### C.  Ground Three

Petitioner claims prosecutorial misconduct in his third ground for habeas relief.  Petitioner alleges that the prosecutor committed a discovery violation by failing to disclose C.S.O. Officer Rowe, the C.A.D. Report containing the examination of the firearm at the crime scene, and the Florida Department of Law Enforcement's (FDLE) firearm test results.  Petition at 20. Petitioner suggests that his trial counsel, Henry Quinn Johnson, could not have learned of Officer Rowe because Petitioner's previous attorney, Jennifer Love, was defense counsel during the deposition of Officer Santoro when Officer Rowe's name came up. Id. at 21.

This claim is completely without merit.  The state, in its Discovery Exhibit and Demand for Reciprocal Discovery, listed the FDLE analyst as a witness.  Ex. A at 16.  This document also references "FDLE results and reports."  Id. at 17.  The state's First Supplemental Discovery Exhibit listed David Warniment as a witness and listed his FDLE report as an exhibit.  Id. at 21.

Petitioner's defense counsel, Jennifer Love, attended the deposition of Officer Santoro. Ex. H at 261. Officer Santoro attested that he thought CSO Rowe was the officer who emptied the weapon. Id. at 294. When asked for the name of the other officer, Santoro stated that the officer's name would be on the CAD report. Id. The prosecutor said he might list Rowe as a witness at some point, but he did not currently have him listed. Id. at 296.

Petitioner raised this ground in his Rule 3.850 motion, and the circuit court rejected it holding:

> [H]is claim fails because he has not established that the State committed a discovery violation and that, even if they had, that he suffered prejudice as a result. Indeed, the record here indicates that all Florida Department of Law Enforcement results and reports were tendered to the Defense during discovery. (Ex. G.) Thus, if Officer Rowe had produced a written report, the record suggests it was turned over to the Defense.
>
> Furthermore, defense counsel learned of Officer Rowe's involvement in the collection of evidence during Officer Santoro's deposition on September 7, 2007, some two months before trial, and immediately complained that the State had not listed him as a witness. (Ex. E at 35-37.) And at trial, David Warniment, the Florida Department of Law Enforcement's firearm examiner, testified that he preformed [sic] several tests on the gun, which revealed that the gun was in perfect working order; thereby rendering any potential testimony by Officer Rowe merely cumulative in nature. (Ex. D at 93-94.) Aside from Mr. Warniment's testimony, Officer Santoro, as stated supra in Ground Two, authenticated the firearm as being the same that he saw in Defendant's possession. (Ex. D at 28-33, 45-46, 49, 51). Consequently, Defendant has failed to

> establish that a discovery violation occurred
> and that if it had, that he was prejudiced
> thereby. As such, Ground Four is denied.

Ex. H at 168-69.

As noted by the circuit court, Petitioner's defense counsel was well-informed of the witnesses and the reports. Indeed, the record shows that the FDLE reports were tendered to the defense during discovery. The defense was made aware of witness Rowe. There is absolutely no evidentiary support for Petitioner's claim that the prosecutor failed to disclose either witnesses or reports.

In this instance, there is a reasonable basis for the court to deny relief. Petitioner has not shown otherwise. Therefore, the denial must be given deference. The 1st DCA's rejection of this ground is entitled to deference. The 1st DCA's affirmance was neither contrary to nor an unreasonable application of Supreme Court law, and it did not rely on an unreasonable determination of fact. Thus, ground three is due to be denied.

### D. Ground Four

In his fourth ground, Petitioner raises a claim of ineffective assistance of counsel for failure to file a motion in limine to prevent the state from mentioning the existence of Mr. Lugo, a non-testifying witness. Petition at 25-26. Petitioner complains that Officer Santoro testified to "inadmissible testimonial hearsay evidence." Id. at 27. Petitioner asserts that the prosecutor's presentation of this evidence, without the ability to cross examine Mr. Lugo, violated Petitioner's rights under the Confrontation

- 21 -

Clause.  Id.  Petitioner concedes that the record shows that no statements attributable to Mr. Lugo were actually admitted at trial, but Petitioner still contends that it was "impermissible for the state to have the benefit of the firearm" without Petitioner's ability to cross examine Mr. Lugo.  Id.

In order to prevail on this Sixth Amendment claim, Petitioner must satisfy both prongs of the test set forth in Strickland.  The circuit court recognized the applicable two-pronged Strickland standard prior to addressing the claims of ineffective assistance of counsel.  Ex. H at 158-59.  The court noted that Petitioner claimed that failure to produce Mr. Lugo resulted in a violation of Petitioner's due process and confrontation clause rights since he did not have the opportunity to use Lugo's testimony to challenge the authenticity of the firearm or to refute or contradict Officer Santoro's testimony concerning the firearm.  Id. at 171.  The court concluded that the state was not required to present additional witnesses to corroborate Mr. Santoro's testimony.  Id. at 172.  The court further found that "any objection by counsel, whether based on a confrontation clause violation or some other legal reason, would have been futile."  Id.

In addressing this claim for habeas relief, the circuit court re-stated Petitioner's claim:

> In Ground Ten, Defendant alleges counsel was ineffective for failing to file a motion in limine to exclude the testimony of Mr. Lugo, a non-testifying witness in his trial. The Court construes Defendant's claim as an

- 22 -

allegation that counsel should have filed a motion in limine to prohibit the State from mentioning or commenting upon the existence of Mr. Lugo without producing him as a witness. Defendant asserts prejudice in that Officer Santoro testified he told Mr. Lugo to pick up the firearm which Defendant was alleged to have possessed, and place it in his patrol car; this firearm was subsequently introduced into evidence against Defendant at trial.

Ex. H at 173.

After conducting an evidentiary hearing, id. at 325-77, the circuit court rejected this ground, stating:

> Initially, as noted *supra*, it was actually defense counsel, not the State, who brought up the existence of Mr. Lugo by objecting to the introduction of he firearm on the basis of chain of custody. (Ex. D at 31-33.) Additionally, at the evidentiary hearing, both Defendant and Mr. Johnson testified that no statements attributable to Mr. Lugo were admitted at trial. Rather, the record indicates Officer Santoro testified that he saw Defendant holding a gun and when it fell onto the ground during the struggle, he asked Mr. Lugo to collect it for him and put it in his patrol car. (Ex. D at 27, 29, 32-33, 44-46, 48-49, 55.) The fact that Mr. Lugo retrieved the firearm at the request of Officer Santoro did not provide a legal basis for objection. Cf. Pierre-Charles v. State, 67 So. 3d 301, 305 (Fla. 2nd DCA 2011) (explaining that a head nod in response to a question may be considered hearsay). Because any objection by counsel would have been futile, counsel was not ineffective and Ground Ten is denied. See Willacy, 967 So.2d at 140.

Ex. H at 173-74.

The record shows that defense counsel did not stand idly by, without objecting to the introduction of the gun into evidence. Id. at 203. He objected, expressing concern about "the collection

- 23 -

of the gun[.]" Id. Upon voir dire examination, Officer Santoro testified that the gun was in his sight, but he was not the one who picked the gun up off of the ground. Id. at 204. Upon further inquiry, he stated that someone else picked up the gun. Id. The court overruled defense counsel's objection. Id. at 205. Once the trial court overruled the objection, defense counsel proceeded to cross examine Officer Santoro about Mr. Lugo's actions. In response, Officer Santoro testified that Mr. Lugo picked up the gun. Id. at 209.

The circuit court rejected this claim of ineffective assistance of trial counsel. The 1st DCA affirmed. Thus, there is a qualifying state court decision under AEDPA. This Court presumes that the 1st DCA adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Also of note, the last adjudication on the merits is unaccompanied by an explanation. Thus, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. With regard to this claim of ineffective assistance of counsel, he has not accomplished that task.

Since there is a reasonable basis for the court to deny relief, the denial must be given deference. Here, deference under AEDPA should be given to the 1st DCA's adjudication. Its decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of

Strickland, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief based on his claim of ineffective assistance of counsel.

In this case, defense counsel was not ineffective for failure to file a motion in limine. Of note, there were no statements of Mr. Lugo brought out at trial. Ex. H at 339. Furthermore, it was counsel's strategic decision to try and show a flawed chain of custody, and the only way to do that was to bring out Mr. Lugo's existence. See id. at 373.

Under these circumstances, defense counsel's performance cannot be deemed deficient. On this record, Petitioner has failed to carry his burden of showing that his counsel's representation fell outside that wide range of reasonably professional assistance for failing to file a motion in limine. Even assuming deficient performance by his counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the proceeding would have been different if his lawyer had filed such a motion in limine. Petitioner's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

Upon review, there is a reasonable basis for the court to deny relief; therefore, the denial must be given deference. Thus, deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Given due consideration, its decision is not inconsistent with Supreme Court precedent,

including Stickland and its progeny.   The state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.   As such, ground four is due to be denied.

## E.  Ground Five

In his fifth ground, Petitioner claims his appellate counsel was ineffective for failing to argue that the lower court erred in determining the Petitioner's encounter with law enforcement was initially consensual.   Petition at 32.   Petitioner raised this claim in his Petition for Writ of Habeas Corpus.   Ex. N.   The 1st DCA denied the petition alleging ineffective assistance of appellate counsel on its merits.   Ex. O.   Thus, there is a qualifying state court opinion for AEDPA purposes.   Based on the 1st DCA's denial of the claim on its merits, this Court must "review it using the deferential standard set out in § 2254(d)(1)." Rambaran v. Sec'y, Dep't of Corr., 821 F.3d 1325, 1330 (11th Cir.), cert. denied, 137 S.Ct. 505 (2016).

When addressing a claim of ineffective assistance of appellate counsel, the two-part Strickland standard is applicable:

> To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims

- 26 -

of ineffective assistance of appellate counsel
are governed by the same standards applied to
trial counsel under Strickland.") (quotation
marks omitted). Under the deficient
performance prong, the petitioner "must show
that counsel's representation fell below an
objective standard of reasonableness."
<u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at
2064. "The standards created by <u>Strickland</u> and
§ 2254(d) are both highly deferential, and
when the two apply in tandem, review is doubly
so." <u>Harrington</u>, 562 U.S. at 105, 131 S.Ct. at
788 (quotation marks and citations omitted);
<u>see also</u> <u>Gissendaner v. Seaboldt</u>, 735 F.3d
1311, 1323 (11th Cir. 2013) ("This double
deference is doubly difficult for a petitioner
to overcome, and it will be a rare case in
which an ineffective assistance of counsel
claim that was denied on the merits in state
court is found to merit relief in a federal
habeas proceeding.") (quotation marks and
alteration omitted). "If this standard is
difficult to meet, that is because it was
meant to be." <u>Harrington</u>, 562 U.S. at 102, 131
S.Ct. at 786.

<u>Rambaran v. Sec., Dep't of Corr.</u>, 821 F.3d at 1331.

Upon review of the entire record, appellate counsel did not
perform deficiently. She raised the issue that the trial court
erred in denying Petitioner's motion to suppress, claiming Officer
Santoro lacked reasonable suspicion of illegal activity to justify
the stop. Ex. B; Ex. D. The 1st DCA per curiam affirmed. Ex. E.

In her brief, appellate counsel argued that "[t]his was
clearly a seizure and not merely a citizen encounter." Ex. B at
12. Although she stated that the contact "may have started as a
citizen encounter," as found by the trial court, it certainly
should be considered to be a seizure once the officer grabbed
Petitioner's arm. <u>Id.</u> at 15.

Contending the stop was unjustified, appellate counsel presented a strong argument that the trial court's conclusion was in error. Id. Counsel urged the 1st DCA to find that none of the facts of the encounter "translated into a well-founded suspicion that appellant had committed, was committing or was about to commit a crime" to justify the seizure. Id. at 18. Counsel submitted that the appellate court should find that the stop was illegal, and therefore, Petitioner had a constitutional right to be free of seizure. Id. at 19. In conclusion, counsel argued that the trial court should have suppressed the seized evidence. Id.

In this ground for relief, Petitioner urges the Court to find that appellate counsel was ineffective because she was too quick to concede to the lower court's factual conclusion that the initial interaction was consensual. Petition at 32. Petitioner maintains that appellate counsel should have relied upon the argument that the stop was initiated due to a tip, it constituted an investigatory stop from inception, and the Fourth Amendment prohibited the investigatory stop because there was not a well-founded, articuable suspicion of criminal activity. Id. at 33-34. See Ex. A at 29.

Upon review, the circuit court conducted a hearing on the motion to suppress. Ex. A at 79-98. Initially, the court acknowledged that it had read the relevant depositions. Id. at 83. Thereafter, Petitioner testified as to his encounter with the

police. <u>Id</u>. at 84-90.   Finally, the court heard argument. <u>Id</u>. at

90-98.   It made this finding:

> I'm going to find that at the time that
> Officer Santorio [sic] approached the
> defendant and asked for his name it was
> clearly a consensual encounter.[7]   Officer
> Santorio did testify that after he put his
> hand on the defendant's arm he was not free to
> go, but by then he knew that the defendant was
> in a high crime area with two known criminals,
> that he had refused to give his name, that he
> said he didn't have any identification, yet
> was reaching into his back pocket for no other
> reason than officer safety.   He had the right
> to have the defendant stand up and, of course,
> it was at that point that the defendant
> engaged in criminal conduct which gave him
> probable cause to arrest.   I can't begin to
> see anything unlawful that Officer Santorio
> did here and I will deny the motion to
> suppress.

<u>Id</u>. at 98.

In the appeal brief, appellate counsel elected to focus on the

denial of the motion to suppress.   The trial court's determinations

on the factual issues would, in all likelihood, be given deference,

but the constitutional issue would be reviewed *de novo*, allowing

for the appellate court to employ its decision-making power with

regard to the question of law.   <u>See</u> <u>Seibert v. State</u>, 923 So. 2d

460, 468 (Fla. 2006) (citing <u>Fitzpatrick v. State</u>, 900 So. 2d 495,

510 (Fla. 2005)) (recognizing that the ruling on a motion to

---

[7] Petitioner was sitting on the curb with two known criminals.
Ex. A at 86.   The officer did not recognize Petitioner and asked
for his name.   <u>Id</u>. at 87.   When Petitioner did not respond to the
officer's question, the officer asked Petitioner if he had
identification.   Ex. A at 87.   Petitioner said no.   <u>Id</u>.

- 29 -

suppress is a mixed question of law and fact), <u>cert</u>. <u>denied</u>, 549

U.S. 893 (2006); <u>Wheeler v. State</u>, 956 So. 2d 517, 520 (Fla. 2nd

DCA 2007) (finding the brunt of the findings of fact supported by

competent, substantial evidence, requiring affirmance of the

factual findings).

In these circumstances, involving a mixed question of law and

fact, appellate counsel's real hope of prevailing on appeal

certainly rested on the appellate court considering the

constitutional issue anew. The trial court had the ability to

evaluate and weigh the testimony and evidence presented at the

suppression hearing. On appellate review, the trial court's

factual findings would be given deference, if supported. It was

certainly within the objective standard of reasonableness for

appellate counsel to state that the initial contact may have been

consensual, as found by the trial court, but passionately argue

that this contact quickly transformed into an investigatory stop

culminating in an unjustified seizure.

There is a reasonable basis for the state court to deny relief

on the claim of ineffective assistance of appellate counsel;

therefore, the denial must be given deference. Ex. O. On this

record, the Court finds that the 1st DCA could have reasonably

determined that appellate counsel was not ineffective for not

arguing that the trial court erred in determining the encounter

with law enforcement was initially consensual. "Claims of

ineffective assistance of appellate counsel are governed by the

same standards applied to trial counsel under _Strickland_."
_Philmore v. McNeil_, 575 F.3d 1251, 1264 (11th Cir. 2009) (per
curiam) (citing _Heath v. Jones_, 941 F.2d 1126, 1130 (11th Cir.
1991)), _cert_. _denied_, 559 U.S. 1010 (2010). The Eleventh Circuit
has explained that "[i]n assessing an appellate attorney's
performance, we are mindful that 'the Sixth Amendment does not
require appellate advocates to raise every non-frivolous issue.'
[...] Rather, an effective attorney will weed out weaker
arguments, even though they may have merit." _Id_. (citing _Heath_,
941 F.2d at 1130-31).

The 1st DCA's decision is not inconsistent with Supreme Court
precedent, including _Stickland_ and its progeny. Thus, the state
court's adjudication of this claim is not contrary to or an
unreasonable application of _Strickland_, or based on an unreasonable
determination of the facts. Accordingly, ground five is due to be
denied.

### F.  Ground Six

In his sixth and final ground, Petitioner raises another claim
of ineffective assistance of appellate counsel. Petition at 40.
He claims appellate counsel performed deficiently when she did not
argue that the trial court erred in admitting the firearm into
evidence without the establishment of a proper chain of custody.
_Id_. Petitioner exhausted this ground in his state habeas petition.
Ex. N.  The 1st DCA denied relief.  Ex. O.  Thus, there is a
qualifying state court decision pursuant to AEDPA. Deference under

AEDPA is due. Its decision is not inconsistent with Strickland. The adjudication is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Ground six is due to be denied.

The record shows that defense counsel did make an objection as to chain of custody, but the trial court overruled his objection. Ex. H at 203-205. Officer Santoro said that the gun was in his sight the entire time. Id. at 204. In response to the question, "did it ever leave your control or out of your vision before it was stored in the Jacksonville Sheriff's property room[,]" Santoro said no. Id. at 201. Santoro testified that he watched Mr. Lugo pick up the gun and place it into the patrol car. Id. at 213.

"In order to demonstrate probable tampering, the party attempting to bar the evidence must show that there was a probability that the evidence was tampered with—the mere possibility is insufficient." Armstrong v. State, 73 So. 3d 155, 171 (Fla. 2011) (citing Murray v. State , 838 So. 2d 1073, 1082–83 (Fla. 2002)), cert. denied, 132 S.Ct. 2741 (2012). In this case, Petitioner makes a vague and conclusory allegation that Officer Santoro "allowed the firearm to be tampered with." Petition at 42. Petitioner states that the gun was "tampered, tainted, contaiminated [sic] and altered[.]" Id. at 43. He does not, however, present any evidence whatsoever showing a probability of tampering, altering, or contamination of the evidence.

As noted by Respondents, Petitioner's complaint is "largely that a citizen was allowed to touch evidence under an officer's orders and observation." Response at 26. Although Petitioner surmises that the evidence could have been tampered with at some point, this suggestion of a mere possibility of tampering does not remotely satisfy the requirement that he demonstrate probable tampering. In fact, there is no real evidence of tampering taking place as no fingerprints were found on the gun, tests results which were considered to be quite favorable to the defense. Ex. H at 236; 340.

A mere allegation of possible tampering is insufficient. Therefore, appellate counsel's failure to raise this issue was not outside "the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This Court finds that "[u]nder the doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard, see Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (per curiam), [Petitioner's] ineffective-assistance claim fails." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Upon review of the entire record, appellate counsel did not perform deficiently. There is a reasonable basis for the state court to deny relief; therefore, the denial must be given deference. The 1st DCA's decision is not inconsistent with Supreme Court precedent, including Stickland and its progeny. Thus, the state court's adjudication of this claim is not contrary to or an

unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground six.

Accordingly, it is now

**ORDERED:**

1. The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of the Court** shall enter judgment accordingly and close this case.

3. If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability**.[8] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

---

[8] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 15th day of June, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 6/8
c:
Arthur L. Braddy
Counsel of Record